**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

In Re: Case No: 11-39825 LMI
Chapter 7

Leslie Howard Roberts, Jr.,
Silvia Castro Roberts,
Debtors.
_______________________________/

Leslie Howard Roberts, Jr., Adversary No: 13-01141-LMI
Silvia Castro Roberts,
Plaintiffs,

vs.

Ryan Mack d/b/a
Griffin Galleries,
Defendant.
_______________________________/

**DEFENDANT/COUNTER-DEFENDANT RYAN MACK D/B/A GRIFFIN GALLERIES' WRITTEN CLOSING STATEMENT**

The fundamental issue presented to this Court is whether Plaintiff/Counter-Defendant, Leslie Howard Roberts, Jr., (hereinafter referred to as "Les Roberts") is entitled to a discharge of the debt owed to Defendant/Counter-Plaintiff, Ryan Mack d/b/a Griffin Galleries, (hereinafter referred to as "Ryan Mack") arising out of the sale of sixty-three (63) alleged original and authentic Romero Britto paintings from April of 2009 through November of 2009.

Ryan Mack buys and sells fine art and memorabilia through his gallery, but primarily through on-line sales. Most, if not all, of the transactions are conducted by e-

mail and once an item is purchased, the item is inventoried by Ryan Mack with the purchase price, the seller and a photograph of the item. (David Hamilton's testimony). Les Roberts sells art and claimed to be an authorized seller for Britto Central, Inc. (Roberts testimony).

From April 30, 2009 through November 23, 2009, Ryan Mack purchased what he was told by Les Roberts were sixty-three (63) authentic and original Romero Britto paintings. Ryan Mack was told by Les Roberts that he obtained the original and authentic Romero Britto paintings from Romero Britto's sister in Brazil because his wife, Linda, also from Brazil, was friends with Romero Britto's sister. (Les Roberts testimony and Exhibit 66). David Hamilton testified that after reviewing the inventory listings, e-mails and photographs kept at Griffin Galleries, it was determined that sixty-three (63) of the alleged Romero Britto paintings purchased from Les Roberts had questionable authenticity.

Ryan Mack made payments for the purchase of the sixty-three (63) alleged Romero Britto paintings sold by Les Roberts by credit card or through PayPal funds to one of four accounts used by Les Roberts. (Hamilton testimony and Roberts testimony). The primary account was through lindasafira1@yahoo.com which was the account of Les Robert's wife. (Roberts testimony and Exhibit 73, p. 69 ¶¶22-25 and p. 70, ¶¶1-12). Ryan Mack then sold fifty-four (54) of the sixty-three (63) paintings to his customers during the same time period in 2009. (Hamilton testimony).

In November and December of 2009, questions began to be raised by other galleries; Ryan Mack's own customer and Magical Thinking Art (Romero Britto's distribution company) about the authenticity of the paintings Ryan Mack was selling on-line. (Hamilton Testimony, Roberts Testimony, Exhibits 66; 67; 68; 69; 70; 71; 72; 92; 93; and 94). As a result, Ryan Mack requested that Les Roberts provide additional verification that the sixty-three (63) Romero Britto paintings he purchased from Les Roberts were authentic and original Romero Britto paintings as previously represented. *Id.*

During the course of their business relationship, Ryan Mack and Les Roberts communicated primarily by e-mail. Ryan Mack's e-mail address was rlambo121@aol.com and Les Roberts e-mail address was lindasafira1@yahoo.com. (Hamilton testimony and Roberts testimony). In December of 2009, Les Roberts sent a number of e-mails to Ryan Mack addressing the questions regarding authenticity of the Romero Britto paintings he had sold to Ryan Mack and confirming again that the paintings were authentic. (Exhibits 66; 67; 68; 69; 70; 71; 72; 92; 93; and 94). These e-mails consisted of independent verifications from sources such as Michael Rosen, Richard Alayon, Esq. and even Romero Britto that the paintings were original and any allegations otherwise were illegal and defamatory. (Exhibits 68, 69, 71, 72, 92, and 93).

However, despite these reassurances from Les Roberts, Ryan Mack refunded thirteen (13) of the alleged Romero Britto paintings he purchased from Les Roberts and

had sold to his customers because they were alleged to be fraudulent paintings by his customers. (Hamilton testimony). This left twenty-two (22) alleged Romero Britto paintings in the possession of Ryan Mack who sent a request to Britto Central, Inc. to authenticate the alleged Romero Britto paintings.

All twenty-two (22) or 100% of the alleged Romero Britto paintings that were sold to Ryan Mack by Les Roberts were determined by Britto Central, Inc. not to be authentic or original Romero Britto paintings. (Bortz testimony). In fact, Britto Central, Inc. and Magical Thinking Art could find no documents or invoices that demonstrated that any of the alleged Romero Britto paintings at issue were ever sold to Les Roberts, Silvia Castro, Coral Gables Galleries or Britto in the Grove because the paintings simply did not exist in their system. *Id.*

Since that time, Britto Central, Inc. has not been able to determine whether the remaining forty-one (41) alleged Romero Britto paintings purchased from Les Roberts and sold to Ryan Mack's customers are authentic or not authentic based simply on the photographs of the paintings. *Id.* However, given that the twenty-two (22) alleged Romero Britto paintings purchased from Les Roberts that are in the possession of Ryan Mack were found to be 100% unauthentic (fraudulent) and not original Romero Britto paintings, the presumption under the totality of the circumstances demands and supports a finding that the remaining forty-one (41) paintings are also unauthentic and not original Romero Britto paintings. In fact, Les Roberts has been unable to produce one document,

invoice, or other proof that the remaining forty-one (41) alleged Romero Britto paintings were legitimately purchased from Magical Thinking Art, Britto Central or any other individual or gallery. (Exhibit 78 and Exhibit 73, p.44-46).

Ryan Mack seeks in his counterclaim to be made whole for the damages he has sustained and will sustain if successful in this action for the misrepresentations by Les Roberts that the sixty-three (63) Romero Britto paintings were authentic and original Romero Britto paintings obtained from Brazil. Ryan Mack seeks damages in the amount of $235,029.09 and a finding by this Court that the debt owed by Les Roberts to Ryan Mack is not dischargeable pursuant to 11 U.S. §523(a)(2)(A) and 11 U.S. §523(a)(6).

## I. LES ROBERTS DEBT IS NOT DISCHARGEABLE UNDER 11 U.S. §523(a)(2)(A)

The provisions of 11 U.S. §523(a) are based on two fundamental policy goals. The first and central purpose is to provide debtors with a fresh start in life. *Grogan v. Garner*, 498 U.S. 279, 286 (1991). However, the provisions of 11 U.S. §523(a) also prevents a dishonest debtor from escaping liability and deriving a benefit of a discharge of a debt incurred through their wrongful and dishonest conduct. *Id*. at 287.

An objection to discharge of a debt under 11 U.S. §523(a)(2)(A) is based on the traditional elements of common law fraud and to prevail under Section 523(a)(2)(A) a creditor must prove that:

(1) the debtor made a false representation with the purpose and intent to deceive;

(2) the debtor relied on the misrepresentation;

(3) the reliance was justified; and

(4) the creditor sustained a loss as a result of the representation.

*In re McDowell*, 415 B.R. 601, 608 (Bankr.S.D.Fla. 2008); *See also In re Bilzerian,* 153 F.3d 1278, 1281 (11th Cir.1998); *In re Johannessen*, 76 F.3d 347, 350 (11th Cir. 1996). The creditor has the burden of proving each element by a preponderance of the evidence. *Grogan,* 498 U.S. at 291.

**(A) <u>Les Roberts made a number of false representations to Ryan Mack with the purpose and intent to deceive.</u>**

In determining whether or not a creditor has proven fraud by a debtor, the Eleventh Circuit has stated that:

> A bankruptcy court may look to the totality of the circumstances, including the recklessness of a debtor's behavior, to infer whether a debtor submitted a statement with intent to deceive. "Reckless disregard for the truth or falsity of a statement combined with the sheer magnitude of the resultant misrepresentation may continue to produce the inference [sic] of intent [to deceive]"

*In re Miller*, 39 F.3d 301, 305 (11th Cir. 1994) (citing *In re Albanese*, 96 B.R. 376, 380 (Bankr.M.D.Fla.1989)). "The misrepresentation and nondisclosure of material facts, coupled with their deceptive conduct with [all parties], established the fraudulent intent of the defendants, under the totality of the circumstances." *In re Cravey*, 105 B.R. 700, 703 (Bankr.M.D.Fla, 1989); *See also Ershowsky v. Freedman (In re Freedman)*, 431 B.R. 245, 257 (Bankr.SD.Fla. 2010) (finding debt nondischargeable under 11 U.S.C §523(a)(2)(A) based upon the "totality of the circumstances").

This Court heard evidence that Les Roberts represented to Ryan Mack that the sixty-three (63) Romero Britto paintings he sold to him were authentic and original Romero Britto paintings that Les Roberts obtained directly from Romero Britto's sister in Brazil. (Exhibits 66, 67, 70 and 94). Les Roberts represented to Ryan Mack that it was because of this special relationship he had in Brazil with Romero Britto's sister that he was able to obtain such good pricing for these authentic and original Romero Britto pieces of art that could then be passed on to Ryan Mack. *Id*.

In an e-mail dated December 10, 2009 (Exhibit 66), Les Robert's informed Ryan Mack that Sundook (referring to Sundook Galleries) was complaining to Romero Britto about the Ebay sales. Les Roberts then told Ryan Mack that Linda (referring to his wife) was afraid because Romero Britto may figure out that some of the "originals" came from his sister's gallery in Brazil and that they would then be prohibited from purchasing artwork anymore from Brazil. *Id*. He then asked Ryan Mack not to list Brittos for a few days until he settled the Sundook issue. Les Roberts further told Ryan Mack that "[i]f we work together we can do this for a long time and you will get the benefits of Brazil pricing." *Id*.

Les Roberts expressly asked Ryan Mack to rely on his statements so he could "benefit" from the special pricing he received from Brazil. Les Roberts admitted on the stand at trial that he lied to Ryan Mack when he told him that he purchased directly from Romero Britto's sister in Brazil and that he obtained the art directly from Brazil.

The issue of authentication of the alleged Romero Britto paintings purchased from Les Roberts arose when Ryan Mack's customer Michel Stamati questioned the authenticity of the Romero Britto paintings he had obtained from Griffin Galleries. Les Roberts responded directly to Mr. Stamati by continuing to represent that he purchased this artwork directly from Romero Britto's sister in Brazil in an e-mail on December 18, 2009. (Exhibit 67). In that e-mail. Les Roberts confirmed that the paintings were authentic and verified and informed Mr. Stamati he could request authentication from Renee Miles at brittogallery1@gmail.com. Renee Miles was employed by Coral Gable Gallery and related to Michael Miles who was allegedly the director of Coral Gables Gallery. (Roberts testimony and Exhibit 73, p. 76, ¶¶ 76-20.) The e-mail was signed by "Les Roberts, Britto in the Grove."

Then Les Roberts sent Ryan Mack his answer to how he was going to settle the Sundook issue. On December 19, 2009, Les Roberts using his standard e-mail sent Ryan Mack an e-mail of a cease and desist letter addressed to Sundook Fine Art Galleries from attorney Richard Alayon, Esq. of the law firm Brooks & Alayon, LLP on behalf of Coral Gables Galleries. (Exhibit 68). The alleged cease and desist letter demands that Sundook Galleries refrain from comments or statements involving claims of fraud against Coral Gables Galleries under a threat of a multi-million dollar action and cites to Florida Statute §634.336. The letter was attributed to Richard Alayon, Esq.

However, this Court heard direct testimony from Richard Alayon, Esq. that while

he has met Les Roberts concerning other matters, the cease and desist letter or e-mail was not something he or his firm would have sent. He testified that the style and manner of writing was different and that he was 100% sure that neither he nor his office sent this letter or e-mail. Les Roberts will not admit to sending this e-mail to Ryan Mack despite the fact that it was sent using the same e-mail address lindasafira1@yahoo.com as the other e-mails he acknowledged were sent to Ryan Mack during this time period. David Hamilton also testified that he reviewed the original e-mail and confirmed that it was in its original form as presented in Exhibit 68.

Les Roberts clearly created this false cease and desist letter using the name of Richard Alayon, Esq. and his law firm in an attempt to continue to mislead Ryan Mack into believing that he had sold him authentic original Romero Britto paintings and that Sundook Galleries' complaint about the authenticity of the painting Ryan Mack purchased from Les Roberts was illegal and wrongful. It is clear that no such cease and desist letter was ever created by Richard Alayon, Esq. and any such claim by Les Roberts was an outright lie.

Ryan Mack then received an e-mail dated December 24, 2009 directly from Michael Rosen under the e-mail address of michrosen99@yahoo.com stating his client from Miami told him that Ryan Mack needed help in authenticating the art work from Romero Britto and he (Michael Rosen) would contact Ryan Mack's customer (Michel Stamati) directly to inform him that the artwork was from the Romero Britto Studios Sao

Paulo Brazil. (Exhibit 71). The e-mail was electronically signed by Michael Rosen at www.britto.com.br with the e-mail address of MICHROSEN@YAHOO.COM. The two e-mail addresses do not match.

Then on December 26, 2009, Les Roberts forwarded an e-mail allegedly from Michael Rosen to Michel Stamati dated December 26, 2009. (Exhibit 72). In this e-mail, Michael Rosen claims that he use to work for Magical Thinking Art and Britto Central and left to take a position in the Romero Britto Sao Paulo Brazil Galleria. The e-mail then went on to explain why the Lincoln Road Gallery could not find the registrations numbers for the "originals" because the numbers were different in Brazil than in the U.S. Market. The e-mail then states the "originals" purchased from Mr. Mack were authentic and that the Seal on each COA (Certificate of Authenticity) is the one used in Romero Britto Galleria in Brazil. The e-mail was again signed by Michael Rosen with the e-mail address this time of MICHROSEN99@YAHOO.COM.

Despite these repeated assurances from Les Roberts to Ryan Mack that the sixty-three (63) Romero Britto paintings were authentic and original, the question of their authenticity remained. The issue of authentication was now being raised by Magical Thinking Art which is the distribution company for Romero Britto. Les Roberts, in a desperate effort to continue to try and keep Ryan Mack from knowing that the sixty-three (63) paintings he sold to him were unauthentic and fraudulent Romero Britto paintings, sent Ryan Mack an e-mail from Michael Rosen to Jessica at Magical Thinking Art on

December 26, 2009. (Exhibit 69).

In this "forwarded e-mail," Michael Rosen tells Jessica from Magical Thinking Art to "stop telling people we're selling fake Brittos." The e-mail claims that the paintings are coming from the Brazil Gallery and that is why the numbers do not match. The e-mail itself is suspect in that it does not appear to have ever been forwarded to Les Roberts from Michael Rosen because there is no indication as to how Les Roberts received this alleged e-mail. Les Roberts then informs Ryan Mack that Michael Rosen was going to e-mail Les Roberts with Jessica's response.

Les Roberts testified under oath at this hearing that he was told by Michael Rosen that the paintings he purchased were from Romero Britto's Gallery in Brazil and while he admitted that he lied about buying directly from the sister of Romero Britto in Brazil, he believed Michael Rosen was telling him the truth about the Romero Britto paintings coming from Brazil. This was a complete lie.

This Court heard testimony from Michael Rosen that while he had worked as a personal assistant to Romero Britto for a time period and also sold posters wholesale for Britto Central, Inc. and Magical Thinking Art in 2009 until he was laid off around the beginning of 2010, he never sold original Romero Britto artwork as part of his job duties with Britto Central or sold anything to Les Roberts. He also testified that he had only seen Les Roberts once at Britto Central. Michael Rosen testified that he had never been to Brazil or worked for Romero Britto's Gallery in Brazil.

Michael Rosen also testified when he reviewed the e-mails dated December 24, 2009 (Exhibit 71) and the two emails dated December 26, 2009 (Exhibit 72 and Exhibit 69) that he never sent any of the e-mails. Michael Rosen testified that michrosen99@yahoo.com was not an e-mail address he ever used either when he worked at Britto Central, Inc. or personally.

The user profile in the Yahoo! Account Management Tool for michrosen99@yahoo.com obtained from Yahoo! pursuant to a subpoena evidences that this e-mail account was created on December 22, 2009, and was created in the United States by "Mr Romero Britto" with a birth date of January 1, 1972. (Exhibit 82). It is clear this account was created by an individual who wished to hide his or her true identity and was first used on December 24, 2009 (just two days after the e-mail account was created) to send an e-mail to Ryan Mack at the "request" of Les Roberts in Miami.

On December 30, 2009, Ryan Mack received an e-mail from Michel Stamati stating he just got an e-mail from Romero Britto confirming that the originals were from Brazil and forwarding that e-mail he received from Romero Britto. (Exhibit 93). Once again, this Court heard testimony from Mikael Bortz, Esq., General Counsel for Britto Central, Inc. and Magical Thinking Art, Inc., that the alleged e-mail address for Romero Britto in the December 30, 2009 e-mail was not any of the two e-mail addresses used by Romero Britto and that the December 30, 2009 e-mail was not an e-mail sent by Romero Britto. (Bortz testimony).

This e-mail was followed up by another e-mail from Les Roberts to Ryan Mack dated December 30, 2009 in response to Mr. Stamati closing his PayPal dispute. (Exhibit 70). In this e-mail Les Roberts states "as promised I took care of everything for you. I know all these people well!" He then told Ryan Mack that Michael Rosen asked Les Roberts to have Ryan Mack remove the "originals" from Ebay for a week because Romero Britto was angry with Michael Rosen for selling outside of Brazil. He claims there was a meeting to discuss what Romero Britto wants to do on the Brazil prices. Once again Les Roberts indicate he still has "originals" from Brazil.

Finally on January 7, 2010, Les Roberts sent an e-mail to Ryan Mack confirming how hard he had worked to get everyone to help solve the Michel Stamati issue including his part in having Romero Britto talk to Stamati. (Exhibit 94). Les Roberts then informs Ryan Mack that his wife Linda was in Brazil to obtain more sculptures and paintings for Ryan Mack. Les Roberts already admits that his wife Linda did not go to Brazil to buy artwork and that he had again lied to Ryan Mack. (Roberts testimony).

However, his claim at trial that he obtained all of his art from Magical Thinking Art, the distribution company for Romero Britto, was also a misrepresentation. Les Roberts could produce not one invoice that would support such a claim. The only invoices Les Roberts could produce from Magical Thinking Art contained no purchases that match the description, whether by title or item number, of any of the sixty-three (63) paintings sold to Ryan Mack. (Exhibit 78).

Les Roberts knew that he sold Ryan Mack d/b/a Griffin Galleries sixty-three (63) unauthentic and fraudulent pieces of alleged Romero Britto paintings when he represented to him that they were authentic and original Romero Britto paintings that he purchased at a lower cost directly from Romero Britto's sister in Brazil. He made those representations because he knew Ryan Mack and others would only buy authentic and original pieces of art from Romero Britto and it explained why he was able to offer these items at discounted prices compared to others. In reality, Les Roberts was able to offer discounted prices to Ryan Mack and others because the paintings were not authentic originals from Magical Thinking Art or Britto Central, Inc.

The totality of Les Roberts actions in November and December of 2009, when the authenticity of the paintings were questioned, provides uncontroverted evidence of the fact that he knew the sixty-three (63) paintings were not authentic or original when he originally sold them to Ryan Mack. When questions started being asked about the authenticity of the artwork sold to Ryan Mack, Les Roberts took extreme measures to try and convince Ryan Mack that the Romero Britto paintings he sold him were original Romero Britto paintings obtained from Brazil. These extreme measures included assuming the identities of known individuals and creating false letters and e-mails in their name so that he could continue to mislead Ryan Mack in an attempt to conceal his fraudulent representations that the sixty-three (63) Romero Britto paintings were original and authentic.

When Sundook Galleries began questioning the price of the Romero Britto paintings sold by Ryan Mack, Les Roberts then became desperate and created a fake cease and desist letter directed to Sundook Fine Art Galleries in the name of Richard Alayon, Esq. This cease and desist letter in this e-mail is an absolute falsification and was created by Les Roberts to attempt to convince Ryan Mack that the allegations that Les Roberts sold fake artwork by Sundook Galleries was illegal and improper.

Les Roberts knew that his admitted lie about buying artwork directly from Romero Britto's sister in Brazil would be easy to discredit and so Les Roberts created a middleman/fall guy for the purchase of this fraudulent Romero Britto art by Les Roberts. In that regard, on December 22, 2009, Les Roberts assumed the identity of Michael Rosen who Les Roberts knew worked for Romero Britto and then created an e-mail michrosen99@yahoo.com under the false identity of Mr. Romero Britto.

Two days later Ryan Mack was contacted by "Michael Rosen" under a signature block for Galeria Romero Britto in Sao Paulo – Brasil (even though the yahoo e-mail was created in Miami Florida). Michael Rosen was introduced as the seller to Les Roberts in Miami from the Romero Britto Gallery in Brazil. Les Robert's story had now changed and Michael Rosen became the individual who could independently confirm the authenticity of the Romero Britto paintings sold by Les Roberts to Ryan Mack.

Les Roberts testified under oath that he not only purchased the Romero Britto paintings from Michael Rosen, but also spoke to Michael Rosen directly about the

questions of authenticity including being asked by Michael Rosen to tell Ryan Mack not to put the "originals" on Ebay for a few weeks. This again is an outright lie. Michael Rosen provided credible and uncontroverted evidence that these representations by Les Roberts, including statements made under oath, were lies to try and conceal the fact that Les Roberts knew he sold Ryan Mack sixty-three (63) fraudulent Romero Britto paintings as authentic and original.

Finally, Les Roberts last act of extreme desperation was to assume the identity of Romero Britto himself in order to send to Ryan Mack's customer Michel Stamati an e-mail confirming the artwork was an original from his gallery in Brazil. This Romero Britto e-mail was sent from an e-mail address that did not belong to Romero Britto. Les Roberts confirms that he was behind this e-mail when he sent Ryan Mack an e-mail on January 7, 2010 begging Ryan Mack to help him out because he helped Ryan Mack out with the Stamati problem because "Romero talked to him." Once again this e-mail was an outright lie made by Les Roberts in a desperate attempt to conceal the fact that he knowingly sold Ryan Mack sixty-three (63) fraudulent Romero Britto paintings as authentic and original.

Les Roberts did all of this for one reason and only one reason, because he knew that he had sold Ryan Mack d/b/a Griffin Galleries sixty-three (63) fraudulent and unauthentic Romero Britto paintings and he had to conceal that fact by any means possible. Misrepresentations and nondisclosure of material facts, coupled with deceptive

conduct established fraudulent intent under the totality of the circumstances. *In re Cravey*, 105 B.R. at 703; *Ershowsky*, 431 B.R. at 257. Les Roberts' actions in concealing the original misrepresentation that the sixty-three (63) paintings he sold Ryan Mack were authentic and original Romero Britto paintings provides more than enough evidence that the original representation was made with fraudulent intent and meant to deceive Ryan Mack d/b/a Griffin Galleries under the totality of the circumstances.

**(B) Ryan Mack relied on the misrepresentations.**

Ryan Mack replied upon these representations when he purchased for $212,500.00 of what he thought were sixty-three (63) authentic and original Romero Britto paintings from Les Roberts and then sold fifty-four (54) of those paintings to his customers. David Hamilton testified that in the business of selling and buying fine art the buyer does rely on the seller's description of the art as authentic and original along with relying on the corresponding certificates of authenticity that accompany the art. (Hamilton testimony). David Hamilton also testified that Ryan Mack d/b/a Griffin Galleries would not buy or willingly sell artwork that was fake or unauthentic. Ryan Mack also continued to rely on the information provided to him by Les Roberts to prove that the sixty-three (63) Romero Britto paintings he sold him were authentic and original Romero Britto paintings which caused significant delays and expenses in proving that the alleged Romero Britto paintings were not authentic or original.

**(C) Ryan Mack's reliance was justified.**

The Supreme Court has determined that justifiable reliance, as opposed to actual reliance or any other form of reliance, is the appropriate standard to apply to 11 U.S. §523(a)(2)(A) claims. *Field v. Mann*, 516 U.S. 59, 77 (1995). A person is justified in relaying on a representation of fact although he may have ascertained the falsity of the representation had he made an investigation. *Id.,* at 70-71 (citing Restatement (Second) of Torts, § 540 (1976)). However, justifiable reliance takes into account the capacity and knowledge of the individual which may require him under some circumstances to make an investigation if he believes he is being deceived. *Id.; See also In re Vann*, 57 F.3d 277, 283 (11th Cir. 1995); *Ershowsky*, 431 B.R. at 258-259.

Ryan Mack is an experienced and knowledgeable art dealer. When Ryan Mack purchases a piece of art he relies not only on his experience with a particular artist's work, but the description of the art by the seller and the certificates of authenticity for the artwork. Les Roberts held himself out to be an authorized seller of Romero Britto artwork. When Ryan Mack purchased the sixty-three (63) alleged Romero Britto paintings from Les Roberts, he justifiably relied on the representations by Les Roberts that the paintings were authentic and original Romero Britto paintings.

Further, there was nothing about the front or back of the sixty-three (63) alleged Romero Britto paintings sold by Les Roberts that would have caused anyone, including an experienced art dealer, to question any further the representations that the sixty-three

(63) Romero Britto paintings were authentic or original especially given the certificates of authenticity that accompanied the paintings. In fact, not even the artist himself, Romero Britto, nor his representatives from Magical Thinking Art and Britto Central, Inc., have the ability to simply review a painting or photograph of the painting alleged to be his own to determine if it is authentic or not without having the actual piece of art and carrying out a lengthy, time consuming and expensive authentication process. (Bortz testimony).

Finally, when the question of authenticity was first raised, Ryan Mack did not simply sit back and rely on the original representations of Les Roberts regarding the authenticity of the Romero Britto paintings, but inquired further into the issue. He did so by going to Les Roberts for additional confirmation and verification that the sixty-three (63) alleged Romero Britto paintings were authentic and original Romero Britto paintings. What Ryan Mack received from Les Roberts was more false statements including false statements of authenticity made by the assumed identities of Les Roberts, Richard Alayon, Esq., Michael Rosen and Romero Britto, in an attempt to continue to conceal his misrepresentations. He did so because he wanted to have Ryan Mack rely upon such representations.

Again, Les Roberts held himself out to be an authorized seller of Romero Britto artwork. Ryan Mack was reasonably justified in relying upon the original misrepresentations that the sixty-three (63) paintings were authentic and original Romero Britto paintings and was also justified in relying upon the continued misrepresentations

made by Les Roberts both individually and through his aliases when the question of authenticity was being investigated.

**(D) <u>Ryan Mack has sustained a loss as a result of the representation by Les Roberts.</u>**

A Bankruptcy Court is empowered to hear and determine all core proceedings, which include determinations as to the dischargeability of particular debts, and "enter appropriate orders and judgments." 28 U.S.C. § 157(b)(1). Such judgments include money judgments for nondischargeable debts. *Morrison v. Western Builders of Amarillo, Inc. (In re Morrison)*, 555 F.3d 473, 479-80 (5th Cir. 2009); *See also Markwood Investments, Ltd. v. Neves (In re Neves)*, 500 B.R.651, 660-661 (Bankr.S.D.Fla. 2013). Damages is a fundamental element of a section 11 U.S.C. §523(a)(2)(A) cause of action and the Bankruptcy Court routinely enters nondischargeable judgments for specific monetary amounts. *Morrison*, 555 F.3d at 479-480.

David Hamilton provided extensive testimony on behalf of Ryan Mack d/b/a Griffin Galleries regarding the damages being claimed as a direct result of the misrepresentation by Les Roberts. Ryan Mack is seeking a total of **$182,314.09** in compensatory and incidental damages directly resulting from the fraud and misrepresentation by Les Roberts.

David Hamilton testified that Ryan Mack purchased the sixty-three (63) alleged Romero Britto paintings from Les Roberts through his many PayPal accounts a total of $212,500.00. (Hamilton testimony and Exhibit 89) David Hamilton also testified that

they were able to obtain some of that money back from Les Roberts through successful credit card disputes in the amount of $181,274.76. (Hamilton testimony and Exhibit 88). However, Ryan Mack was not able to recover the remaining compensatory damages of **$31,225.24** for the remaining purchases of fraudulent art work from Les Roberts that was paid using the funds from PayPal because too much time had lapsed to challenge the payments under PayPal's guidelines. (Hamilton testimony).

David Hamilton then determined that Ryan Mack incurred compensatory damages in the amount of **$11,000.00** for labor and materials that were expended on the sixty-three (63) fraudulent and unauthorized paintings from Les Robert, The labor and materials were for preparing and framing the paintings for re-sell to Ryan Mack's customers. David Hamilton testified that of the sixty-three (63) paintings purchased from Les Roberts, Ryan Mack sold 54 of the paintings. (Hamilton testimony). Ryan Mack incurred an Ebay/PayPal fee in the amount of **$23,350.70** for the sale of those paintings. David Hamilton testified that the Ebay/PayPal amount of $23,350.70 was determined by the percentage charged by Ebay and PayPal for transactions and then applied to the number of sales to arrive at the number.

David Hamilton testified that Ryan Mack incurred additional compensatory damages for shipping fees of $7,880.00 and payment of sales commissions paid to Jon Hill in the amount of $30,058.33 arising out of the sale of the fifty-four (54) fraudulent Romero Britto paintings. David Hamilton testified that loss profits from the twenty-two

(22) paintings which include the thirteen (13) returned fraudulent paintings that were purchased from Les Roberts and were refunded to the customers was **$55,702.97**. (Hamilton testimony).

Ryan Mack then incurred incidental damages in the amount of **$23,096.85** paid to David Hamilton for the collection of the disputed credit card transactions arising out of the fraudulent sale of alleged Romero Britto paintings by Les Roberts. David Hamilton testified that he spent 80 to 100 hours working on obtaining the amounts back and the amount of $23,096.85 was what he was paid to recovery the $181,274.76 for the credit card disputes.

The total compensatory and incidental damages arising out of the fraudulent conduct of Les Roberts in the sale of unauthentic and fraudulent Romero Britto paintings totals $363,588.88 less the $181,274.76 for a total of **$182,314.09**.

Ryan Mack also seeks future compensatory damages related to the cost to refund the remaining forty-one (41) fraudulent paintings purchased from Les Roberts that were sold and still remain in the possession of Ryan Mack's customers. (Hamilton testimony) "Florida law requires that assumptions used to support [future damages] conclusions be reasonably certain, not mere best case scenario predictions." *Sun Ins. Mktg. Network, Inc. v. AIG Life Ins. Co.*, 254 F. Supp. 2d 1239, 1247 (M.D. Fla. 2003).

David Hamilton testified that the lost profits Ryan Mack seeks are for the damages associated with the refund of the forty-one paintings that were sold to his customers for

lost profit of $46,215.00. David Hamilton testified that he arrived at this number based on the gross sale of the forty-one (41) paintings to the customer less the cost of original purchase of inventory from Les Roberts, the percentage of expense due to cost of labor and material, commission, Ebay/PayPal fees and shipping returns to arrive at the realized loss profits in the amount of **$46,215.00**. David Hamilton was not basing his numbers on speculation or assumptions but on reliable data and known costs factored into determining the realized lost profits after taking into account the amounts that have already been claimed for compensatory and incidental damages.

Ryan Mack also requests as future damages the amount of shipping that will be required to obtain the forty-one paintings back from the customers in the amount of **$6,500.00**. Once again this is based on the number of paintings that need to be shipped and past shipping charges incurred by Griffin Galleries. (Hamilton testimony). The total claimed for future damages related to the refund and shipping of the forty-one (41) fraudulent Romero Britto paintings total **$52,715.00**.

The total damages sought arising out of Les Robert's misrepresentations that sixty-three (63) paintings were authentic and original Romero Britto paintings totals $235, 029.09.

There is an issue regarding what is to be done with the sixty-three (63) fraudulent Romero Britto paintings that will be in the possession of Ryan Mack. These sixty-three (63) fraudulent Romero Britto paintings were created for the purpose of deceiving and

defrauding legitimate consumers of authentic and original Romero Britto art. Therefore, the only value of the sixty-three (63) fraudulent paintings is to those unscrupulous individuals who would seek to profit from such deceit and fraud and as such these sixty-three paintings have no legitimate value within the market place. Ryan Mack requests that this Court order all sixty-three (63) fake and unauthentic Romero Britto paintings to be destroyed.

Defendant Ryan Mack requests judgment in the amount of $235,029.09 against Les Roberts and a finding that such debt is not dischargeable under the provisions of 11 U.S. §523(a)(2)(A).

## II. LES ROBERTS DEBT IS NOT DISCHARGEABLE UNDER 11 U.S. §523(a)(6)

Any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity" is nondischargeable. 11 U.S.C. § 523(a)(6). A creditor must establish by a preponderance of the evidence that the debtor: (1) deliberately and intentionally; (2) injured Plaintiff or Plaintiff's property; by (3) a willful and malicious act. *In re Nofziger*, 361 B.R. 236, 242 (Bankr.M.D.Fla. 2006). A creditor must establish by a preponderance of the evidence the injury was intentional—that the debtor intended the consequences of his act. *Kawaauhau v. Geiger*, 523 U.S. 57, 61-62 (1998). Ryan Mack re-asserts its arguments above that Les Roberts deliberately and intentional injured Ryan Mack d/b/a Griffin Galleries. The question is whether Les Roberts action was willful and malicious.

**(A) <u>Les Roberts misrepresentations were willful and malicious</u>.**

A willful act is one that is intended to cause injury or from which injury is substantially certain to result. *Maxfield v. Jennings (In re Jennings)*, 670 F.3d 1329, 1334 (11th Cir. 2012) (citing *Kawaauhau v. Geiger*, 523 U.S. 57, 61-62 (1998)). A malicious act is one that is "wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill-will." *Id.* at 1334.

The sale of sixty-three (63) fraudulent and unauthentic Romero Britto paintings by Les Robert to Ryan Mack when Les Roberts knew that the art was not authentic or original Romero Britto art is a willful act that is intended to cause Ryan Mack injury. In the case of Ryan Mack, Les Robert's knew Ryan Mack resold the art under Griffin Galleries and that he would suffer damage not only to his reputation, but also financially, for unknowingly selling fraudulent art to his customers.

This willful act became a malicious act when Les Roberts continued to conceal from Ryan Mack the fact that he sold him sixty-three (63) fraudulent and unauthentic Romero Britto paintings. Les Roberts took excessive measures to continue to mislead Ryan Mack by assuming the identities of others and creating false letters and e-mails to cover-up his wrong doing.

As a result of Les Roberts deliberate and intentional injury caused by Les Roberts willful and malicious act Ryan Mack has sustained damages in the amount of $235,029.09. Ryan Mack requests that the Court find that the debt owed him by Les

Roberts is not dischargeable under 11 U.S. §523(a)(6).

## CONCLUSION

Defendant Ryan Mack d/b/a Griffin Galleries requests that this Court find that Plaintiff Les Roberts committed fraud by intentionally and knowingly misrepresenting and selling to Ryan Mack sixty-three (63) fraudulent Romero Britto paintings as authentic and original Romero Britto paintings; that Ryan Mack relied on the misrepresentations when he purchased the sixty-three (63) fraudulent Romero Britto paintings for $212,500.00 from Les Roberts; that as a result of the misrepresentations and fraudulent acts Ryan Mack has sustained compensatory and incidental damages in the amount of $363,588.88 less the $181,274.76 refunded through the credit card disputes for a total of **$182,314.09**; that Ryan Mack will be required to refund his customers for the remaining forty-one (41) fraudulent Romero Britto paintings he purchased from Les Roberts and sold to his customers resulting in future damages in the amount of **$52,715.00**; and that judgment be entered against Les Roberts in favor of Ryan Mack d/b/a Griffin Galleries in the amount of **$235,029.09** plus costs and expenses and for any other relief provided by this Court.

In addition, Ryan Mack requests that this Court order that all sixty-three (63) fraudulent Romero Britto paintings be destroyed so they cannot be put back into the market place and that Les Roberts incur the costs associated with Ryan Mack destroying the paintings.

Finally, Ryan Mack requests this Court find that the debt owed by Les Roberts to Ryan Mack cannot be discharged pursuant to 11 U.S. §523(a)(2)(A) and 11 U.S. §523(a)(6).

Dated: 4 April, 2014

By: s/ Michael W. Lowden, Esq.
MICHAEL W. LOWDEN, ESQ.
THE LOWDEN LAW FIRM
4737 County Road 101, #304
Minnetonka, MN 55345
(952) 896-8000 (Telephone)
(952) 835-6173 (Facsimile)
mlowden@lowdenlawfirm.com

By: s/ Allison L. Friedman
ALLISON L. FRIEDMAN, ESQ.
Florida Bar No. 0055336
ALLISON L. FRIEDMAN, P.A.
20533 Biscayne Blvd., Suite 4-435
Aventura, Florida 33180
(305) 905-2679 (Telephone)
(305) 692-9387 (Facsimile)
ralfriedman@hotmail.com